UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| RUSSELL BLAKE DETWILER JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:10-CV-00194-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**Statement of the Case**

Pursuant to 42 U.S.C. § 1383(c), Plaintiff Russell Blake Detwiler Jr. seeks judicial review of a decision of the Commissioner of Social Security denying his application for supplemental security income. The United States District Judge transferred this case to a United States Magistrate Judge for further proceedings. Detwiler did not consent to proceed before a United States Magistrate Judge, and therefore the undersigned now files this Report and Recommendation.

An Administrative Law Judge (ALJ) held a hearing on September 3, 2009, and determined on November 6, 2009, that Detwiler was not disabled because he could perform jobs that existed in significant numbers in the national economy. The ALJ also held that Detwiler's impairments did not meet or equal any of the impairments listed in the regulations governing Social Security claims. The Appeals Council denied review on October 27, 2010. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision

1

"includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Detwiler previously worked as a laborer for awning, marble, and roofing companies. (Tr. 44–45, 117–19, 127.) He claims that he became disabled on May 15, 2003, due to his criminal record, mental problems, and a "slight heart attack[.]" (Tr. 45, 126.) Detwiler has indicated that he spends most of his time sleeping and walking around his neighborhood looking for cans to exchange for spending money. (Tr. 46, 101, 132.)

The evidence of record contains varying accounts of the last grade Detwiler completed in school, ranging from sixth to ninth grade. (Tr. 43, 130, 195.) He was incarcerated for more than ten years until at least November 2006. (Tr. 43, 192.) While incarcerated, he received treatment for various mental conditions, including polysubstance dependence, antisocial personality disorder, and a history of depressive disorder and psychosis. (Tr. 185, 188.) From January 22, 2008, to at least July 29, 2009, Detwiler received treatment at Lubbock Regional Mental Health Mental Retardation Center (MHMR) for various mental issues, including antisocial personality disorder (ASPD) and bipolar disorder. (Tr. 278, 309–10.) Medical records indicate that Detwiler missed six of approximately fifteen scheduled appointments at MHMR during that period. (Tr. 255, 264, 270, 272, 276, 307.)

On September 3, 2009, Detwiler and a vocational expert testified at a hearing before the ALJ. (Tr. 40–55.) Detwiler was represented by counsel at the hearing. (Tr. 40.)

## Standard of Review

A plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3) (2011).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. § 416.920(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 416.945(a)(1), 416.920(a)(4)(iv)-(v).

Judicial review of a decision by the Commissioner is limited to two inquiries: a court must "consider only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447. "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## Discussion

Detwiler does not contest any findings regarding his physical abilities. He argues that

3

substantial evidence does not support the ALJ's finding that his impairments did not meet or equal listing 12.04 for affective disorders. (Pl.'s Br. 14.) He also argues that the ALJ's RFC assessment does not adequately account for the opinion of a state agency psychologist. (Pl.'s Br. 10–14.) Finally, he argues that the hypothetical question posed to the vocational expert was improper. (Pl.'s 11–12.)

I.  Detwiler's argument regarding listing 12.04 does not require remand.

A claimant is disabled if he has an impairment that meets or equals an impairment listed in Appendix 1 of the regulations governing Social Security claims. 20 C.F.R. § 416.920(d). To meet a listing in Appendix 1, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (italics in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* Similarly, to equal a listing a claimant "must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders*, 914 F.2d at 619. A claimant bears the burden of offering medical evidence to support a finding of disability at this step. *See id.*; *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (upholding ALJ's finding that claimant's bipolar disorder did not meet listing 12.04 because claimant did not offer medical evidence that supported such a finding).

To meet or equal listing 12.04, a claimant must satisfy either subsection B or C of that listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. To satisfy subsection B, a claimant must display at least two of the following:

        1.     Marked restriction of activities of daily living; or

        2.     Marked difficulties in maintaining social functioning; or

4

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration[.]

*Id.* § 12.04(B).

Detwiler has not indicated which subsection he meets; he appears to argue that a report prepared by state agency psychologist Lee Wallace, Ph.D., is evidence that his bipolar disorder meets or equals listing 12.04. (Pl.'s Br. 11–12.) Dr. Wallace reviewed Detwiler's available medical records and found that he experienced mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. 234.) Dr. Wallace further found that Detwiler had no episodes of decompensation of extended duration. *Id.* These findings do not satisfy subsection B, which requires marked functional restrictions in at least one category. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B). In addition, Dr. Wallace explicitly found that Detwiler's medical evidence did not satisfy subsection C. (Tr. 235.) Accordingly, Detwiler's argument does not require remand. *See Roberson*, 481 F.3d at 1023.

II.    <u>Substantial evidence supports the ALJ's RFC assessment.</u>

The ALJ found that Detwiler had the RFC to perform the requirements of work activity at all exertional levels except that he was limited to work "which does not entail working with the general public, which only entails superficial contact with coworkers and supervisors, and which is limited to non-complex work." (Tr. 15.) The following substantial evidence supports this conclusion: Detwiler achieved I.Q. scores in the low average range and was assigned to work while in prison. (Tr. 195–96, 191, 200.) Although prison medical records indicate that he experienced a setback after missing two appointments in November 2006 (Tr. 192), they also reflect that his

symptoms improved with treatment and that he displayed organized thought processes, good self control, and good communication skills. (Tr. 185, 191, 196.) MHMR records also reflect that Detwiler's mood swings, irritability, and agitation improved with medication. (Tr. 254, 260, 275, 304.) At an appointment with a consulting physician on September 23, 2008, Detwiler reported doing fairly well with medication and had no complaints of difficulty in focusing or concentrating. (Tr. 242.) In a function report submitted in connection with his application for benefits, he reported that he took care of his dog, cleaned, did laundry, mowed, cooked, and shopped for himself. (Tr. 133–35.) In addition, he stated that he could pay bills, count change, handle a savings account, and use a checkbook. (Tr. 135.) He further stated that he could had no problems getting along with others and that he got along "alright" with authority figures. (Tr. 137–38.) At the hearing before the ALJ, Detwiler testified that he lived with friends, helped them by cutting the grass or painting, and sometimes rode his bicycle over thirty miles at a time. (Tr. 45–48.)

Detwiler asserts that the ALJ's RFC assessment does not adequately account for the findings of state agency psychologist Dr. Wallace. (Pl.'s Br. 10–14.) Specifically, he argues that his global assessment of functioning (GAF) scores "indicate serious symptoms which [Dr. Wallace] identified and the ALJ simply chose to ignore[.]" (Pl.'s Br. 13.) Prison medical records reflect that Detwiler's GAF scores ranged from 65 to 70, indicating that he had some mild symptoms but was "generally functioning pretty well[.]" (Tr. 193, 203); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000) [hereinafter DSM-IV]. MHMR records show that Detwiler's GAF scores ranged from 42 (indicating serious symptoms) to 60 (indicating moderate symptoms). (Tr. 262, 303); DSM-IV at 34.

ALJs "are not bound by findings made by State agency or other program physicians and

6

psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2 (July 2, 1996). Alleged improprieties in Social Security cases "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

After reviewing Detwiler's available medical records, Dr. Wallace opined that Detwiler was markedly limited in his ability to understand, remember, and carry out detailed instructions; moderately limited in nine other mental activities; and otherwise not significantly limited. (Tr. 238–39.) In addition, Dr. Wallace found that Detwiler could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings" despite the aforementioned limitations. (Tr. 240.) Regarding these opinions the ALJ noted that Dr. Wallace's opinion "did not provide a rationale and findings of fact, were rendered without the benefit of personally observing the claimant and reviewing all of the pertinent medical reports, and were wholly conclusory and unsupported." (Tr. 15.) The ALJ concluded, "My determination of the claimant's residual functional capacity is therefore in no way based on such opinions." *Id.* Thus the ALJ neither ignored Dr. Wallace's opinion, nor did he fail to explain the weight given to that opinion. *See* SSR 96-6p, 1996 WL 374180 at *2 (July 2, 1996). Furthermore, Dr. Wallace's opinion and Detwiler's GAF scores do not "cast into doubt the existence of substantial evidence to support" the ALJ's RFC assessment. *Morris*, 864 F.2d at 335. Accordingly, remand is not required.

III.    The hypothetical posed to the vocational expert was appropriate.

An ALJ may rely on the testimony of a vocational expert to determine whether jobs exist

7

in the national economy that a claimant can perform. *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (holding that substantial evidence supported ALJ's determination that jobs available to claimant existed in the national economy because vocational expert testified to that effect and explained how he arrived at his conclusions). When an ALJ bases a determination of non-disability on the testimony of a vocational expert in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:

    1.    The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or

    2.    The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

    In the instant case, the ALJ asked the vocational expert if jobs existed in significant numbers in the national economy that could be done by someone with Detwiler's age, education, and work history, who had no exertional impairments but could not work with the general public, could have only superficial contact with coworkers and supervisors, and could perform only non-complex work. (Tr. 53.) The vocational expert responded that someone with those limitations could perform, for example, the jobs of cleaner, store laborer (stock clerk), and packager. *Id.* The expert further testified that there were more than 100,000 cleaners, 90,000 store laborers, and 70,000 packagers in the national economy. *Id.* Detwiler's attorney then asked the vocational expert whether inability to be around high levels of noise or activity would affect the hypothetical individual's ability to perform the identified jobs. (Tr. 54.) The vocational expert answered that the identified jobs

involved moderate levels of noise and activity. *Id.* Detwiler's attorney next asked whether a person who was unable to remain on task and complete even non-complex tasks would be able to retain the identified jobs. (Tr. 55.) The vocational expert responded, "Well, every competitive job requires the worker to complete the assigned task. And so if the worker is unable to complete the assigned task they would not be able to maintain the job." *Id.*

The ALJ found that Detwiler had the severe impairments of bipolar disorder and antisocial personality disorder. (Tr. 11.) The ALJ accounted for these impairments when he predicated the question posed to the vocational expert on Detwiler's RFC. (Tr. 15, 53.) As previously discussed, substantial evidence supports the ALJ's RFC assessment. Furthermore, Detwiler's attorney was given the opportunity to suggest any purported defects in the ALJ's question, and the attorney used that opportunity to propose additional limitations. (Tr. 54–55.) Accordingly, the ALJ's hypothetical question does not constitute reversible error. *See Bowling*, 36 F.3d at 436.

## **Conclusion**

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Detwiler's complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2011); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the

9

magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

        Dated:        January 19, 2012.

                                           NANCY M. KOENIG
                                           United States Magistrate Judge